**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 0 2 2024

TAMMY H. DOWNS, CLERK

By:_____
DEP CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
Central   ~~LITTLE ROCK~~ DIVISION

BL United, LLC
Pipe Me Industry, Inc.

**PLAINTIFFS**

vs.                    Case No. __4:24-cv-3-JM__

The Nurserie Farm & Garden Market, Inc.;
Carrie Nichole Galloway, an individual; and
Robin Lee Galloway, an individual

**DEFENDANTS**

This case assigned to District Judge __Moody__
**COMPLAINT** and to Magistrate Judge __Ervin__

Plaintiffs, BL United, LLC and Pipe Me Industry, Inc. (collectively, "Plaintiffs"), by and

through its counsel, for its Complaint against Defendants The Nurserie Farm & Garden Market,

Inc., Carrie Nichole Galloway, an individual, and Robin Lee Galloway, an individual,

(collectively, "Defendants"), do hereby state:

**THE PARTIES**

1.      Plaintiff BL United, LLC ("BLU") is an Arkansas limited liability company with

its principal place of business in North Little Rock, Arkansas.

2.      Plaintiff Pipe Me Industry, Inc. ("Pipe Me") is an Arkansas corporation with its

principal place of business in North Little Rock, Arkansas.

3.      Based on information and belief, Defendant The Nurserie Farm & Garden Market,

Inc. ("Nurserie") is an Arkansas corporation with its principal place of business at 7901 Stagecoach

Road, Little Rock, Arkansas. The Arkansas Secretary of State website shows that Defendant

Nurserie has a status of "not current." Attached Exhibit A is an excerpt of the Arkansas Secretary

of State listing and is incorporated herein by reference.

4.     Based on information and belief, Defendant Carrie Nichole Galloway, also known as Nickie Galloway, ("Ms. Galloway") is a resident of Pulaski County, Arkansas. Defendant Ms. Galloway is a shareholder of Defendant Nurserie.

5.     Based on information and belief, Defendant Robin Lee Galloway, also known as Rob Galloway, ("Mr. Galloway") is a resident of Pulaski County, Arkansas. The Arkansas Secretary of State's website lists Defendant Mr. Galloway as President of Defendant Nurserie.

## JURISDICTION AND VENUE

6.     This is an action for false marking under the Patent Act, false advertising under the Lanham Act, unfair competition under the Lanham Act, unfair competition under Arkansas common law, and declaratory judgment concerning intellectual property ownership.

7.     This Court has subject matter jurisdiction over the federal law claims pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b). The Court has subject matter jurisdiction over the state law and common law claims pursuant to 28 U.S.C. § 1367(a). The Court has personal jurisdiction over the parties because all parties reside within Arkansas. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)-(c).

## BACKGROUND FACTS

8.     Since at least as early as December 2020, Plaintiff BLU owns, controls, or otherwise has permission to commercialize various domestic and international patents, inventions, innovations, technologies, and other intellectual property concerning conduit pipes, pipe systems, rack systems, and attachments as used in different industries, such as plant and produce agriculture.

9.     BLU owns, controls, or otherwise has permission to manufacture and commercialize the invention disclosed in U.S. Design Patent No. D913,962 ("962 Patent") for a conduit pipe and pin. Attached Exhibit B is a copy of U.S. Design Patent No. D913,962 and is incorporated herein by reference.

2

10.     Luis Campos ("Mr. Campos") is a longtime inventor for BLU concerning conduit pipes, pipe systems, holders, and attachments. He has assigned, or otherwise is under obligation to assign, the relevant inventions and innovations to BLU.

11.     During the relevant times identified in this action, Mr. Campos was a manager and an agent of BLU to manage the daily affairs of the business including, but not limited to, inventing and researching innovative applications for BLU products, inventions, and innovations; and overseeing manufacturing and distribution activities of BLU's licensee, Pipe Me Industry, Inc.

12.     During the relevant times identified in this action, Mr. Campos was a manager and an agent of Pipe Me to manage the daily affairs of the business including, but not limited to, overseeing manufacturing activities of products, inventions, and innovations licensed from BLU; procuring wholesale and retail customers for product distribution; and expanding business opportunities.

13.     BLU has licensed various intellectual property rights to Pipe Me, including a right to commercialize various patent rights owned or controlled by BLU. More specifically, Pipe Me has BLU's permission to manufacture, or to have manufactured, BLU's patented and proprietary products, inventions, and innovations. Pipe Me has BLU's permission to use, distribute, sell, and offer to sell BLU's proprietary products, inventions, and innovations to wholesale and retail customers.

14.     Before April 2022, Mr. Campos, on behalf of BLU, began researching and improving the conduit pipe of at least the '962 Patent for use in the agricultural industry that would allow plant and food produce cultivation and growth in either a horizontal or vertical arrangement, with or without the use of soil. Mr. Campos also began modifying the pin from the '962 Patent for application in the agricultural industry using the schematics and dimensions from at least the '962

3

Patent. He began initial testing and experimentation for the products for growing plants and food produce for vertical farming. The initial testing was successful. Attached Exhibit C is a collection of photographs showing initial proposed changes to the '962 patent and is incorporated herein by reference.

15.     Based on information and belief, Defendant Nurserie is a local garden center and market near the I-430 and I-30 interchange in Little Rock, Arkansas ("Nurserie Location"). The Nurserie Location includes an outdoor greenhouse and an indoor room for growing plants and food produce. It also promotes and sells third party products for gardening, hydroponics, homebrews, houseplants, and food market items.

16.     On or about April 2022, Pipe Me manager Mr. Campos contacted Defendant Nurserie to inquire about the Nurserie becoming a Pipe Me distributor or wholesale vendor to display, advertise, and sell some of BLU's conduit pipes at the Nurserie Location to Nurserie customers. Attached Exhibit D is an e-mail and proposal from Pipe Me's Mr. Campos to the Nurserie and is incorporated herein by reference. Attached Exhibit E is a collection of photographs showing early versions of the products for vertical farming and is incorporated herein by reference.

17.     On or about April 2022, Defendant Mr. Galloway, representing Defendant Nurserie, indicated that the Nurserie could not immediately afford to purchase the conduit pipes directly from Pipe Me. Mr. Galloway appeared interested in having the conduit pipes and vertical farming at the Nurserie Location.

18.     Mr. Campos later proposed that the Nurserie could be one of its first locations for vertical farming that implemented the conduit pipes for growing plants and food produce.

19.     At all relevant times, BLU owned or otherwise controlled inventions, innovations, and products provided to Nurserie, including conduit pipes / grow tubes, spacers, and pot holders.

4

Licensee Pipe Me, an independent company, worked on behalf of BLU as manufacturer and distributor to provide the inventions and products for Nurserie's limited use, and to provide the daily management of the proposed joint venture.

20.     Mr. Campos made modifications or improvements made to the spacers and pot holders that were disclosed to Defendants during the joint venture, with Plaintiffs granting Defendants an implied license to use and make such products during the joint venture arrangement.

21.     Based on information and belief, Defendant Nurserie is in the business of growing and selling plants and produce. Defendant Nurserie is not in the business of inventing or manufacturing structural products to customers, such as conduit pipes for wholesale or retail.

22.     Based on information and belief, Defendant Nurserie was neither using vertical farming in its business nor inventing products for vertical farming by any Nurserie employee or shareholder.

23.     Pipe Me manager Mr. Campos proposed to Defendant Nurserie (1) that Pipe Me could provide the conduit pipes and plant holders, to the Nurserie for vertical farming; (2) that Nurserie could provide the physical location and infrastructure to start growing and harvesting plants and food produce using the conduit pipes and holders; (3) that each party would receive 50% of the gross profits to recoup expenses for executing the plan; and (4) that Nurserie would provide Pipe Me with the data Nurserie collected about (a) the plants and food produce grown in the conduit pipes and holders, (b) customer satisfaction, and (c) sales information for Pipe Me's continued research purposes. The parties would each need to provide sufficient financial capital, skills, and knowledge to implement this opportunity. On behalf of the Nurserie, Mr. Galloway agreed to participate. The parties projected that the joint venture would be a profitable, practical endeavor.

5

24.     In reliance on Defendant Nurserie's representations that Defendant Mr. Galloway had the requisite knowledge and experience in vertical farming and that the Nurserie was ready to implement its part of the plan at the Nurserie Location (the "joint venture"), Pipe Me provided nine hundred (900) conduit pipes to the Nurserie Location for installation in the Nurserie outdoor greenhouse and indoor grow house for vertical farming on or about May 2022. Pipe Me also customized the sizing of some of the pipes for installation at the Nurserie Location for vertical farming.

25.     The Nurserie's personnel unloaded the pallets of pipes at Nurserie Location and damaged several pipes to the extent those pipes were unusable at the Location or for resale by Pipe Me. Attached Exhibit F is a collection of photographs of the pallets of pipes and a damaged pipe and is incorporated herein by reference.

26.     Pipe Me initially anticipated that the pipes would be installed at the Nurserie Location and that the first harvest from the vertical farming would occur without delay so the parties could split revenue of plants and food produce sold from those pipes.

27.     Pipe Me and BLU reasonably relied on the representations made by Nurserie's Mr. Galloway that induced Plaintiffs to continue the business relationship until BLU finally terminated the arrangement.

28.     Unknown to Plaintiffs at the time the joint venture was agreed, the Nurserie Location was ill-suited and woefully inadequate to participate in growing, harvesting, and selling plants and food produce grown from the conduit pipes in vertical farming Nurserie Location's.

29.     Unknown to Plaintiffs at the time the joint venture was agreed, Defendant Mr. Galloway overstated and essentially misrepresented not only his experience and skill to participate in the joint venture.

30.     Unknown to Plaintiffs at the time the joint venture was agreed, Defendant Mr. Galloway mispresented the Nurserie's ability to contribute to the joint venture with financial capital, whether directly or indirectly by acquiring third party funding in its name.

31.     Over the next few months, Plaintiffs learned that the Nurserie's Location suffered from inadequate climate control conditions that prohibited successful year-round farming and growing crops in the conduit pipes or elsewhere in the Nurserie Location. The Nurserie Location was plagued by preventable pest infestation that destroyed crops, by predictable plumbing deficiencies, and by insufficient personnel and staffing to support the labor involved.

32.     Based on information and belief, the deficiencies at the Nurserie Location existed prior to April 2022.

33.     Defendant Nurserie knew or should have known that these issues would cause delay to the joint venture.

34.     Defendant Mr. Galloway knew or should have known that these issues would cause a delay to the joint venture.

35.     Without knowledge of these deficiencies, Plaintiffs did not have an opportunity to decline entering into the joint venture or to propose a different arrangement more suitable to Defendants' capabilities.

36.     In an effort to help assist Defendant Nurserie with its responsibilities and at Plaintiffs' direction, Mr. Campos worked with Mr. Galloway and the Nurserie to improve the overall commercial appeal, aesthetic, and infrastructure of the Nurserie Location.

37.     Mr. Campos proposed options for correcting the climate control conditions and personally assisted in staffing to support the labor involved, including cleaning general areas of the Nurserie Location. Mr. Campos frequented various home improvement stores to obtain parts

7

and fittings to repair the numerous deficiencies at the Nurserie Location. Mr. Campos further assisted in remodeling and improving areas of the Nurserie Location, such as a bathroom, burst plumbing, and an indoor grow room renovation.

38.     Plaintiffs expected to recoup Mr. Campos' time, investment labor, and services from the projected revenue once the Nurserie produced and sold the first few harvests using BLU's products.

39.     By June 2022, the hundreds of plants and food produce that were planted within the vertical farming products were either destroyed, never sold, or otherwise were subject to various pest infestations at the Nurserie Location. Attached Exhibit G is a collection of photographs showing the failed growth within the conduit pipes due to conditions and management by Defendants at the Nurserie Location and is incorporated herein by reference.

40.     For example, hundreds of plants and food produce were lost to preventable mice and insect infestations. Strawberry plants failed to thrive due to extreme high and low temperatures due to a lack of suitable climate control of the Nurserie Location's outdoor greenhouse and indoor grow room. These plants did not survive either within the pot holders in the conduit pipes or in other sections of the Nurserie Location that was unrelated to the joint venture project. There was also insufficient electrical support at the Nurserie Location.

41.     Some food produce initially grew within the conduit pipes during favorable, ambient weather conditions, however, the food produce lacked good flavor and consistent growth style due to poor nutrients and pH management by the Nurserie. The harvest was unsuitable to sell to customers.

42.     The failed plants and food produce included the starter plants and food produce grown outside the products that were ultimately never planted using the products.

8

43.     On or about December 2022, more plants and food produce failed to thrive from frost due to the climate conditions that remained uncorrected yet reasonably anticipated, including water pipes bursting.

44.     Meanwhile, Pipe Me provided Defendant Nurserie with various trade secrets, along with schematics and prototypes on improvements made to the vertical farming structural invention and innovations. Plaintiffs disclosed to Defendants that the spacer and the pot holder were modified from the patented pin, each of which are based on the dimensions of the conduit pipe from at least the '962 patent. This invention was owned or otherwise controlled by BLU. The spacer and pot/plant holder replaced an initial foam insert that had been positioned within the conduit pipes for growing the crops.

45.     During the time the parties worked together, Nurserie did not invent any products used in the joint venture, nor did it own any of the products, inventions, or innovations used in the joint venture.

46.     BLU owned or otherwise controlled the collection of conduit pipes, spacers, and pot holders as improved from the '962 Patent.

47.     Third parties owned or otherwise controlled the light sources and the rack frame that initially held the conduit pipes in a vertical or horizontal position.

48.     BLU permitted Nurserie to make limited 3D reprints of the spacers and pot holders for use at the Nurserie Location during the time of the joint venture.

49.     Plaintiffs lost hundreds of thousands of dollars in potential revenue and lost opportunities due to Nurserie's misrepresentations of providing a ready and usable location for the joint venture.

9

50.     The joint venture needed more financial capital to continue funding the project because the anticipated revenue had not been realized due to the Nurserie's preventable delays in providing a suitable climate-controlled environment that was free of pests and extreme weather conditions.

51.     Mr. Campos and Defendant Mr. Galloway discussed obtaining additional funding for the joint venture, either directly or indirectly through third party financing or grants.

52.     The parties were to be equally responsible for liabilities and for providing capital contributions to keep the joint venture on track.

53.     Defendant Nurserie kept representing to Plaintiffs that the infrastructure was nearly complete.

54.     In reliance on Defendant Nurserie's representations, Mr. Campos located a potential financing opportunity with the USDA for $400,000 that could be repaid by the parties after a few short harvests of thriving plants and food produce grown at the Nurserie Location.

55.     Defendant Nurserie was aware that Mr. Campos was pursuing the loan opportunity with the USDA.

56.     Defendant Nurserie initially refused to add its name, or Defendant Mr. Galloway's name, to the USDA application for the joint venture, yet was willing to affirmatively participate in the process.

57.     Defendant Nurserie participated in the application process by permitting a USDA agent to visit the Nurserie Location to confirm an initial business plan of Nurserie leasing space to Pipe Me for crop resell from the greenhouse and indoor grow room. Nurserie agreed to lease space to Pipe Me for such purposes. Nurserie represented to the USDA that Mr. Galloway had the experience and talent for the joint venture to be successful. On or about November or December

10

2022, two USDA agents interviewed Mr. Galloway to obtain additional information about the joint venture before granting final approval of the financial assistance to Mr. Campos.

58.     Representations made by Defendant Mr. Galloway on behalf of Defendant Nurserie to the USDA agents factored into the USDA's decision to approve a $400,000 loan.

59.     It was Plaintiffs' understanding that Nurserie and/or Mr. Galloway would be responsible for $200,000 of the $400,000 loan due to Nurserie's participation in the USDA loan process. Pipe Me provided $100,000 worth of collateral in inventory in order to procure the loan. As part of the joint venture, Defendant Nurserie should have also provided $100,000 in collateral, but did not do so.

60.     After Mr. Campos signed the USDA application to accept the loan, he realized that Nurserie misrepresented that it could provide its share of the capital contribution for the joint venture.

61.     Defendant Nurserie also refused to enroll in other government funding opportunities as a vendor.

62.     Defendant Nurserie, and specifically Defendant Mr. Galloway, was aware or should have known that Nurserie or Mr. Galloway would not attempt to obtain financing or to provide other significant monetary capital to support the joint venture.

63.     Defendant Nurserie and Defendant Mr. Galloway did not in good faith stop the USDA application process with the agent interview before Mr. Campos finalized the loan commitment.

64.     On or about October or November 2022, Arkansas news station THV11 interviewed Mr. Galloway and the Nurserie about the vertical farming business. Nurserie, via Mr. Galloway, represented to the public that the spacer and/or pot holder was "patented," suggesting

11

that the Nurserie was the owner. The video interview aired on or about January 5, 2023. The printed version of the article was also posted on or about that same day. Attached Exhibit H is a copy of January 5, 2023 THV11 online news article and is incorporated herein by reference.

65.     The published interview did not mention BLU, Pipe Me, or Mr. Campos as being involved in the vertical farming endeavor, or that Plaintiffs owned or otherwise controlled the vertical farming products.

66.     Defendant Nurserie, via Defendant Mr. Galloway, falsely advertised in the interview the vertical farming products, including the spacer, were ready for customer use, when in fact, the spacer remained under development by Plaintiffs with no viable prototype yet supporting the endeavor.

67.     Defendant Nurserie, via Defendant Mr. Galloway, falsely advertised in the news interview as to the association or sponsorship of the vertical farming products that such products generated from Nurserie rather than Pipe Me as manufacturer and distributor or BLU as licensor of the products.

68.     During the news interview, Mr. Galloway did not keep the conversation generally focused on the food produce and plants that could be grown using Plaintiffs' hydroponic methods – which would have been in its purview and accurate – but rather improperly and willfully extended the discussion to the individual product components – the intellectual property of such products which the Nurserie did not own.

69.     Defendant Mr. Galloway misrepresented the spacer as being "patented," the misrepresentation of which has proximately caused, or is likely to cause, an injury to Plaintiffs' commercial interest and/or business reputation.

70.     Defendant Nurserie shared and posted the interview to at least its Facebook page on or about January 5, 2023, with a link to the news article and video to its approximately 2k followers. Attached Exhibit I is an excerpt of Defendant Nurserie's Facebook post and is incorporated herein by reference.

71.     Defendant Mr. Galloway had an opportunity during the news interview to state that the spacer invention was "patent pending" or that a patent application had been filed with the United States Patent and Trademark Office, but he failed to do so.

72.     A search of the United States Patent and Trademark Office does not yield any results listing The Nurserie Garden and Market or Defendants Mr. and Ms. Galloway as the owner of an issued patent covering a spacer and a pot holder. Attached Exhibit J is a collection of website excerpts from www.uspto.gov and is incorporated herein by reference.

73.     A provisional patent application was filed by BLU that disclosed the spacer and pot holder, with the application being pending at the Patent Office. No patent rights had been granted to BLU at the time of Mr. Galloway's statement to the media.

74.     Defendant Mr. Galloway knew or should have known that there was no issued patent in the Nurserie's name.

75.     Defendant Nurserie has not taken corrective action to notify THV11 to clarify the statement or to remove the news article from Defendant Nurserie's social media page.

76.     Plaintiffs still attempted to assist Defendant Nurserie complete its obligations to provide a suitable infrastructure and location for the joint venture in an effort to salvage the relationship. On or about January 2023, Mr. Campos provided labor services at the Nurserie Location and remodeled the Nurserie bathroom and the indoor grow room each of which were in disrepair. Mr. Campos helped the Nurserie while waiting for repair parts for the outdoor

greenhouse. The repair parts were presumably ordered by Nurserie but were not delivered by January 2023.

77.     On or about January 25-28, 2023, Pipe Me manager Mr. Campos participated in an exhibit or trade show that would showcase the Pipe Me manufactured products and vertical farming system. Pipe Me used Nurserie as an example of a Pipe Me customer to generate customer interest for both companies. Pipe Me provided all product materials at the vendor booth. Mr. Campos showed the different capabilities and uses of the patented pipe, for example, that the pipe had additional uses in addition to cable management or hydroponic farming. The event did not yield any sales. Attached Exhibit K is a collection of photographs from the exhibit show and is incorporated herein by reference.

78.     Defendant Ms. Galloway provided plants for a table arrangement at the display booth featuring Pipe Me products. She did not stay for the event on behalf of the Nurserie.

79.     Defendant Mr. Galloway did not attend the event and did not provide a Nurserie representative at the booth.

80.     Communication among the parties began to wane. With approximately a year into the joint venture without the Nurserie providing suitable environment for even one successful harvest, the parties had fundamental disagreements about the opportunity to work together.

81.     Given the extended needs for the Nurserie Location's remodeling, the parties could not agree about liability responsibilities, capital contribution obligations, financial decisions, marketing, and daily management the joint venture business at the Nurserie Location. No sales were made from the joint venture at the Nurserie Location.

14

82.     The parties could not agree about ownership and control, liability responsibilities, capital contribution obligations, marketing, financial decisions, and daily management for expanding the joint venture opportunity to beyond the single Nurserie Location.

83.     Defendant Nurserie attempted to encroach into Plaintiffs' separate businesses by suggesting the Defendant Nurserie had some ownership in the BLU spacer and/or pot holder as provided to Defendants by Plaintiffs' inventor and manager, Mr. Campos.

84.     Defendant Nurserie attempted to encroach into Plaintiffs' separate businesses by suggesting that Defendant Nurserie was entitled to information and profits for Plaintiffs' other potential vertical farming business opportunities that implemented the improved conduit pipes and attachments derived from the '962 Patent beyond the Nurserie Location that did not involve Defendants.

85.     At no time was Defendant Nurserie to solely own or own the '962 conduit pipe.

86.     At no time was Defendant Nurserie to solely own or jointly own the innovative spacer and pot holder as tailored to the patented pipe by Mr. Campos, or any improvements or derivatives thereof for at least vertical farming applications.

87.     After failed discussions among the parties' shareholders and managers in a last attempt to resolve their disputes, Plaintiff BLU terminated the joint venture arrangement with the Nurserie and, with Nurserie's consent, had the patented pipes removed from the Nurserie Location.

88.     Defendants have been unjustly enriched by receiving uncompensated labor and services for cleaning and remodeling the Nurserie Location; by obtaining media exposure concerning vertical farming using Plaintiffs' products which directed traffic to Defendants' business; by gaining access to Plaintiffs' trade secrets including, but not limited to, marketing and expansion considerations, potential customers and markets, products, inventions, and innovations.

## COUNT 1

### FALSE MARKING – 35 U.S.C. § 292

89.     Plaintiffs reallege and incorporate by reference all of the allegations in all of the preceding paragraphs.

90.     Section 292 of the Patent Act, 35 U.S.C. § 292(a), states, "Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented, for the purpose of deceiving the public" is liable for false patent marking.

91.     Section 292(b) states, "A person who has suffered a competitive injury as a result of a violation of this section may file a civil action in a district court of the United States for recovery of damages adequate to compensate for the injury."

92.     Defendant Nurserie, via Defendant Mr. Galloway directly and Defendant Ms. Galloway by participation, has falsely marked and continues to falsely mark in commercial advertising and promotion of the January 5, 2023 THV11 news article and video interview on at least Defendant Nurserie's Facebook page and on THV11's website.

93.     In the news interview, Mr. Galloway stated that the spacer and/or pot holder was "patented." The statement suggested Defendant Nurserie owned such products.

94.     At the time of the news interview, the United States Patent and Trademark Office had not issued a patent on such products to Defendants.

95.     Defendants' statements that the spacer and/or pot holder are patented are literally false.

96.     Defendants' false marking statements and advertising concerning the spacer and/or pot holder product are intended to deceive, and has deceived, third parties into believing that such

16

products were patented by Defendants and that Defendants have the exclusive right to manufactured and sell such products.

97.     Defendants' false statements that the products were patented were made in attempt to bolster Defendants' credibility and reputation in the industry.

98.     Defendants' false marking advertising does not mention or indicate that Defendants are not the owners or manufacturers of the products in the news interview, regardless of the patent status.

99.     Third parties would be deceived and confused as to whether Plaintiffs or Defendants own or otherwise control the intellectual property rights concerning the '962 Patent conduit pipe, the spacer, and the pot holder products when making purchasing or funding decisions.

100.    At the time of the news interview, Defendants knew or should have known that the products had not been issued a patent by the United States Patent and Trademark Office.

101.    As a result of Defendants' false marking advertising, Plaintiffs have suffered a competitive injury and are entitled to recover those damages from Defendants.

102.    Plaintiffs have suffered actual damages as result of Defendants' actions and are entitled to recover those damages from Defendants.

103.    Plaintiffs seek judgment from Defendants, jointly and severally.

### COUNT 2

### FALSE ADVERTISING – 15 U.S.C. § 1125(a)

104.    Plaintiffs reallege and incorporate by reference all of the allegations in all of the preceding paragraphs.

105.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), states: "Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which— (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

106.     Defendant Nurserie, via Defendant Mr. Galloway directly and Defendant Ms. Galloway by participation, falsely represented and continues to falsely represent in commercial advertising and promotion of the January 5, 2023 THV11 news article and video interview on at least Defendant Nurserie's business social media page and THV11's website that the spacer and/or the pot holder is "patented," suggesting that Defendant Nurserie is the owner of such products with the exclusive right to manufacture and sell such products.

107.     At the time of the news interview, the United States Patent and Trademark Office had not issued a patent for the spacer and/or pot holder.

108.     By making these false or misleading representations in commercial advertising or promotion in connection with Plaintiffs' products, Defendants' actions are likely to confuse, to cause mistake, or to deceive as to the affiliation, connection, or association of the parties, or as to the origin, sponsorship, or approval of Plaintiffs' products.

18

109.   By making these false or misleading representations in commercial advertising or promotion, Defendants have misrepresented, and continue to misrepresent, the nature, characteristics, or quality of Plaintiffs' products.

110.   By making these misleading and false representations and statements, Defendants intended to deter others from making and using such products, and to garner commercial interest in Defendants' business to the detriment of Plaintiffs.

111.   Defendants' false statements and misrepresentations have damaged or is likely to damage Plaintiffs as being the lawful owner or controllers of the products, the damage to Plaintiffs' respective reputations from a suggestion Plaintiffs and Defendants are currently in business together, and the loss of goodwill concerning Plaintiffs' products.

112.   Plaintiffs have suffered actual damages as a result of Defendants' actions and inactions, and Plaintiffs are entitled to recover from Defendants.

113.   Plaintiffs are also entitled to a disgorgement of Defendants' profits, treble damages, and a recovery of its attorney's fees from Defendants.

114.   Defendants' false advertising has caused and will continue to cause Plaintiffs irreparable harm for which it has no adequate remedy at law unless Defendants' false advertising statements and actions are enjoined by this Court.

115.   Plaintiffs seek judgment from Defendants, jointly and severally.

**COUNT 3**

**UNFAIR COMPETITION – 15 U.S.C. § 1125**

116.   Plaintiffs reallege and incorporate by reference all of the allegations in all of the preceding paragraphs.

117.   Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), states: "Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any

word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which— (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

118.    Defendant Nurserie, via Defendant Mr. Galloway directly and Defendant Ms. Galloway by participation, falsely represented and continues to falsely represent in commercial advertising and promotion of the January 5, 2023 THV11 news article and video interview on Defendant Nurserie's business social media page and on the THV11 website that the spacer and/or the pot holder is "patented," suggesting that Defendant Nurserie is the owner of such products. Such statements unfairly competed with Plaintiffs' business.

119.    At the time of the news interview, the United States Patent and Trademark Office had not issued a patent for the spacer and/or pot holder.

120.    By making these false or misleading representations in commercial advertising or promotion in connection with Plaintiffs' products, Defendants' actions are likely to confuse, to cause mistake, or to deceive as to the affiliation, connection, or association of the parties, or as to the origin, sponsorship, or approval of Plaintiffs' products.

121.   By making these false or misleading representations in commercial advertising or promotion, Defendants have misrepresented, and continue to misrepresent, the nature, characteristics, or quality of Plaintiffs' products.

122.   By making these misleading and false representations and statements, Defendants intended to deter others from making and using such products, and to garner commercial interest in Defendants' business to the detriment of Plaintiffs.

123.   Defendants' false statements and misrepresentations have damaged or is likely to damage Plaintiffs as being the lawful owner or controllers of the products, the damage to Plaintiffs' respective reputations from a suggestion Plaintiffs and Defendants are currently in business together, the loss of goodwill concerning Plaintiffs' products, and unfair competition in obtaining third party financing for future endeavors.

124.   Plaintiffs have suffered actual damages as a result of Defendants' actions and inactions, and Plaintiffs are entitled to recover from Defendants.

125.   Plaintiffs are also entitled to a disgorgement of Defendants' profits, treble damages, and a recovery of its attorney's fees from Defendants.

126.   Defendants' unfair competition has caused and will continue to cause Plaintiffs irreparable harm for which there is no adequate remedy at law unless Defendants' unfair competition activities are enjoined by this Court.

127.   Plaintiffs seek judgment from Defendants, jointly and severally.

## COUNT 4

## UNJUST ENRICHMENT – QUANTUM MERUIT

128.   Except to the extent inconsistent with the relief requested in this claim, Plaintiffs reallege and incorporate by reference all of the allegations in all of the preceding paragraphs.

129.   In the alternative to the breach of contract count, Plaintiffs assert this claim for unjust enrichment via quantum meruit.

130.   As a direct and proximate result of the acts and transactions alleged herein, Defendants Nurserie, Ms. Galloway, and Mr. Galloway have been unjustly enriched, and have obtained renovations, trade secrets, and services from Plaintiffs to which Defendants are not otherwise entitled and for which payment was not made to Plaintiffs. Defendants would not have obtained such benefits from Plaintiffs had the true facts been known to Plaintiffs prior to Defendants Nurserie and Mr. Galloway's representations.

131.   Defendants were unjustly enriched when Plaintiffs provided labor and services to improve the Nurserie Location and infrastructure in the nature of assisting in remodeling a bathroom, an indoor grow room, and an outdoor greenhouse. Defendants did not pay Plaintiffs for these additional services during the joint venture arrangement. Due to Defendants' delays and misrepresentations, Plaintiffs would not be able to recoup its losses and expenses for time and labor services from profits generated from sales of healthy, marketable plant and food produce grown from its products at the Nurserie Location.

132.   Defendants' conduct evidences an operative act, intent, or situation that was committed with intent to injure Plaintiffs substantially, with reckless disregard and willful disregard for Plaintiffs' rights, and without just cause or excuse.

133.   Plaintiffs are entitled to and hereby seek an award of pre-judgment and post-judgment interest together with court costs.

134.   Plaintiffs seek judgment from Defendants, jointly and severally.

**COUNT 5**

**ARKANSAS DECEPTIVE TRADE PRACTICES ACT**

135.    Plaintiff re-alleges and incorporates herein all the allegations in the preceding paragraphs, Paragraphs 1-112, as if fully set forth herein.

136.    The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-107(a) provides that deceptive and unconscionable trade practices are unlawful and prohibited, including the following: "(1) [k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model; (10) [e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade."

137.    Section 4-88-108 provides, "When utilized in connection with the sale or advertisement of any goods, services, or charitable solicitation, the following shall be unlawful: (1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission."

138.    Defendant Nurserie, via Defendant Mr. Galloway directly and Defendant Ms. Galloway by participation, has falsely advertised and continues to falsely advertise in commercial advertising and promotion of the January 5, 2023 THV11 news article and video interview on at least Defendant Nurserie's social media page wherein Mr. Galloway stated that the spacer and/or pot holder was "patented," suggesting it was owned by Defendant Nurserie.

139.    At the time of the news interview, the United States Patent and Trademark Office has not issued a patent on such products to Defendants.

140.    Defendants' statements that the spacer and/or pot holder products are patented are literally false. Accordingly, Defendants have knowingly made a false representation, and continues to misrepresent, the characteristics, uses, benefits, source, sponsorship, or approval of Plaintiffs' products.

141.    Such actions by Defendants are unconscionable, false, or a deceptive practice in business, commerce, or trade.

142.    Plaintiffs have suffered actual damages as a result of Defendants' actions and inactions, and Plaintiffs are entitled to recover from Defendants.

143.    Plaintiffs are also entitled to a disgorgement of Defendants' profits, treble damages, and a recovery of its attorney's fees from Defendants.

144.    Defendants' actions have caused and will continue to cause Plaintiffs irreparable harm for which there is no adequate remedy at law unless Defendants' deceptive activities are enjoined by this Court.

145.    Plaintiffs seek judgment from Defendants, jointly and severally.

### COUNT 6

### ARKANSAS COMMON LAW UNFAIR COMPETITION

146.    Plaintiffs reallege and incorporate by reference all of the allegations in all of the preceding paragraphs.

147.    Defendant Nurserie, via Defendant Mr. Galloway directly and Defendant Ms. Galloway by participation, falsely represented and continues to falsely represent in commercial advertising and promotion of the January 5, 2023 THV11 news article and video interview on Defendant Nurserie's business social media page and on the THV11 website that the spacer and/or

the pot holder is "patented," suggesting that Defendant Nurserie is the owner of such products. Such statements unfairly competed with Plaintiffs' business.

148.    At the time of the news interview, the United States Patent and Trademark Office had not issued a patent for the spacer and/or pot holder.

149.    By making these false or misleading representations in commercial advertising or promotion in connection with Plaintiffs' products, Defendants' actions are likely to confuse, to cause mistake, or to deceive as to the affiliation, connection, or association of the parties, or as to the origin, sponsorship, or approval of Plaintiffs' products.

150.    By making these false or misleading representations in commercial advertising or promotion, Defendants have misrepresented, and continue to misrepresent, the nature, characteristics, or quality of Plaintiffs' products.

151.    By making these misleading and false representations and statements, Defendants intended to deter others from making and using such products, and to garner commercial interest in Defendants' business to the detriment of Plaintiffs.

152.    Defendants' false statements and misrepresentations have damaged or is likely to damage Plaintiffs as being the lawful owner or controllers of the products, the damage to Plaintiffs' respective reputations from a suggestion Plaintiffs and Defendants are currently in business together, the loss of goodwill concerning Plaintiffs' products, and unfair competition in obtaining third party financing for future endeavors.

153.    Plaintiffs have suffered actual damages as a result of Defendants' actions and inactions, and Plaintiffs are entitled to recover from Defendants.

154. Defendants' unfair competition has caused and will continue to cause Plaintiffs irreparable harm for which there is no adequate remedy at law unless Defendants' unfair competition activities are enjoined by this Court.

155. Plaintiffs seek judgment from Defendants, jointly and severally.

## COUNT 7

### BREACH OF CONTRACT

156. Plaintiffs reallege and incorporate by reference all of the allegations in all of the preceding paragraphs.

157. Plaintiffs performed its obligations under its contract with Defendants. Plaintiffs delivered, or had delivered, nine hundred (900) conduit pipes to Defendant Nurserie Location for installation and use by Defendants to plant, grow, and harvest plants and food produce using Plaintiffs' products.

158. Plaintiffs obtained its portion of the monetary capital contribution needed to continue funding the joint venture.

159. Defendants have breached its contract with Plaintiffs by failing to provide a suitable infrastructure, skills, and knowledge to plant, grow, and harvest healthy, marketable plants and food produce using Plaintiffs' products at the Nurserie Location.

160. Defendants have breached its contract with Plaintiffs by failing to provide its portion of the monetary capital contribution needed to fund the joint venture due to Defendants' delay in providing a suitable infrastructure and location.

161. Defendants have breached its contract with Plaintiffs by failing to offer for sale healthy and marketable plants and produce using Plaintiff's products for retail sales at the Nurserie Location.

162.    Defendants have breached its contract with Plaintiffs by failing to reimburse payment for the conduit pipes that were custom prepared for use by Defendants.

163.    As a result of Defendants' breach, Plaintiffs have been damaged in an amount to be determined at trial.

164.    Plaintiffs seek judgment from Defendants, jointly and severally.

**COUNT 8**

**PROMISSORY ESTOPPEL**

165.    Except to the extent inconsistent with the relief requested in this claim, Plaintiffs reallege and incorporate by reference all of the allegations in all of the preceding paragraphs.

166.    Defendant Nurserie and Defendant Mr. Galloway made promises and representations to Plaintiffs via Mr. Luis Campos, an agent and manager for each Plaintiff, for the purpose of inducing Plaintiffs to disclose trade secrets concerning a vertical farm business opportunity and Plaintiffs' proprietary products; to perform labor services for Defendants at the Nurserie Location; and to enter into a joint venture opportunity with Defendant Nurserie on the premise that Defendant Nurserie had the requisite infrastructure, location, monetary and nonmonetary capital contribution, skill, and knowledge to plant and grow healthy, marketable plants and food produce using Plaintiffs' products for resale to Defendant Nurserie's customers at the Nurserie Location.

167.    At the time the parties began working together, Plaintiffs were unaware the Defendant Nurserie was not in good standing and "not current" at the Arkansas Secretary of State.

168.    Plaintiffs reasonably relied on those promises and at Defendant Nurserie's inducement, Plaintiffs provided its products to Defendant Nurserie for installation.

169.    Plaintiffs reasonably relied on Defendant Mr. Galloway's statements and actions that further assistance was needed to improve the infrastructure of the Nurserie Location for the

joint venture to be successful, such as establishing or modifying the climate control conditions and remodeling the Nurserie Location. Plaintiff BL United, LLC, through its licensed distributor Plaintiff Pipe Me Industry, Inc., provided additional labor services beyond providing the vertical farming products and assisted in remodeling the Nurserie Location.

170.    Plaintiffs were induced to disclose its trade secrets concerning the products and vertical farming business on the premise that Defendant Nurserie was qualified and experienced to participate in the joint venture.

171.    At the time Plaintiffs' terminated the joint venture, Defendants still have failed to provide suitable infrastructure for growing healthy, marketable plants and food produce using Plaintiffs' products; to provide monetary capital contribution to fund the joint venture; to maintain an expeditious timeframe to start harvesting and selling plants and food produce grown from Plaintiffs' products; or to provide a year-round climate-controlled, pest-free environment suitable for growing marketable, healthy plants and food produce from Plaintiffs' products.

172.    Plaintiffs have been damaged as a result of its reasonable reliance on Defendants' representations.

173.    Plaintiffs seek judgment from Defendants, jointly and severally.

## COUNT 9

## DECLARATORY JUDGMENT

174.    Plaintiffs reallege and incorporate by reference all of the allegations in all of the preceding paragraphs.

175.    There exists an actual controversy between Plaintiffs and Defendants which is within the jurisdiction of this Court. A controversy concerns confirming ownership and

inventorship of certain BLU products, inventions, and innovations that were disclosed to Defendants by Plaintiffs during the joint venture arrangement.

176.    Plaintiff BL United, LLC owns, controls, or otherwise has permission to commercialize the invention and product in the '962 Patent.

177.    BLU has granted Plaintiff Pipe Me Industry, LLC permission to commercialize the invention and product in the '962 Patent.

178.    Plaintiffs provided the conduit pipes based on the '962 Patent and the BLU innovative spacers and pot holders derived from the pin disclosed in the '962 Patent to Defendant Nurserie for limited use by Defendants at the Nurserie Location during the joint venture arrangement.

179.    The BLU innovative spacers and pot holders were invented prior to confidential disclosure to Defendants.

180.    Defendant Nurserie or Defendant Mr. Galloway are not owners or co-owners, either individually or jointly, of the innovative, proprietary spacers and pot holders that Plaintiffs' manager, Mr. Campos, disclosed to Defendants during the joint venture arrangement.

181.    Defendant Mr. Galloway is not an inventor or co-inventor of the innovative, proprietary spacers and pot holders that Plaintiffs' manager, Mr. Campos, disclosed to Defendants during the joint venture arrangement.

182.    Defendant Nurserie had a limited license from Plaintiffs to use Plaintiffs' spacers and pot holders during the joint venture arrangement, and now that the joint venture has been terminated, such license has been revoked and terminated.

183.     Defendants have represented to the public, and continue to represent to the public, that they own or otherwise control the products and inventions that are actually owned or otherwise controlled by Plaintiff BLU.

184.     Since the joint venture arrangement was terminated, Defendants have taken no corrective action to remove or clarify such representations and suggestions that Defendants own and/or control Plaintiffs' products, inventions, and innovations.

185.     Any further use, or attempted use, by Defendants of Plaintiff BLU's patented products or Plaintiff BLU's innovative, proprietary spacers and pot holders would constitute willful infringement and misappropriation of BLU's intellectual property rights.

186.     Defendants, either individually or jointly, have no rights, including no right to any information, accounting, or distribution of profits, to any current or future agricultural, plant, food produce, and/or farming business generated by Plaintiff BLU, Plaintiff Pipe Me, or any other company or endeavor involving Plaintiffs' members, shareholders, or managers, either individually or in each's capacity as an officer, shareholder, or member of a third party entity, as it relates to any of Plaintiff BLU's preexisting, current, or future patented or unpatented inventions, products, and innovations.

187.     Plaintiffs seek judgment from Defendants, jointly and severally.

188.     Plaintiffs reserve its right to amend this complaint.

WHEREFORE, Plaintiffs, BL United, LLC and Pipe Me Industry, Inc., respectfully request that this Court enter an Order for:

A.     an award of actual damages and Defendants' profits under 15 U.S.C. § 1117 as a result of Defendants' violations of 15 U.S.C. § 1125;

B.      an award of treble damages under 15 U.S.C. § 1117 as a result of Defendants' violation of 15 U.S.C. § 1125;

C.      an order requiring Defendants to complete corrective advertising as a result of Defendants' violation of 15 U.S.C. § 1125;

D.      an award of actual damages under Ark. Code Ann. § 4-88-113(f) from Defendants' violation of Ark. Code Ann. § 4-88-107;

E.      an award of reasonable attorney's fees under Ark. Code Ann. § 4-88-113(f) from Defendants' violation of Ark. Code Ann. § 4-88-107;

F.      an award of actual damages resulting from Defendants' violation of 35 U.S.C. § 292;

G.      a finding that this case is exceptional and an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117;

H.      declaration that Plaintiff BLU is the owner of the spacers and pot holder products, inventions, and innovations;

I.       declaration that Defendant Mr. Galloway is not an inventor or co-inventor of the spacers and pot holder products, inventions, and innovations;

J.       declaration that Defendants, either individually or jointly, are not entitled to any rights, including no right to any information, accounting, or distribution of profits, to any current or future agricultural, plant, food produce, and/or farming business generated by Plaintiff BLU, Plaintiff Pipe Me, or any other company or endeavor involving Plaintiffs' members, shareholders, or managers, either individually or in each's capacity as an officer, shareholder, or member of a third party entity, as it relates to any of Plaintiff BLU's preexisting, current, or future patented or unpatented inventions, products, and innovations;

31

K.      a preliminary and permanent injunction barring Defendants from false advertising that the spacer and/or pot holder products are patented until and unless such inventions are issued a patent by the United States Patent and Trademark Office;

L.      a preliminary and permanent injunction barring Defendants from false advertising that Defendants own or otherwise control the manufacture, sale, or use of the products;

M.      a preliminary and permanent injunction barring Defendants from false marking of an unpatented product;

N.      a preliminary and permanent injunction barring Defendants from disclosing and misappropriating Plaintiffs' trade secrets;

O.      a preliminary and permanent injunction barring Defendants' use of Plaintiff BL United, LLC's patented products and proprietary products, inventions, and innovations without first obtaining a written license from Plaintiff BL United, LLC or Plaintiff Pipe Me Industry, Inc.;

P.      judgment in favor of Plaintiffs and against Defendants, jointly and severally, liable in an amount to be determined at trial;

Q.      an award of damages, jointly and severally, caused by Defendants' unlawful conduct and breach of contract in an amount to be proven at trial, plus costs and interest;

R.      an award of costs and expenses of this action; and

S.      an award for all other such just and proper relief to which Plaintiffs are entitled.

## JURY DEMAND

Plaintiffs, BL United, LLC and Pipe Me Industry, Inc., hereby demand a trial by jury on all issues so triable.

Date: January 2, 2024                              Respectfully submitted,

                                                   RASHAUNA NORMENT LAW FIRM, PLLC
                                                   P.O. Box 30309
                                                   Little Rock, Arkansas 72260
                                                   Office: 501-319-7875
                                                   E-mail: rashauna@normentlawfirm.com

                                                   By: _Rashauna A Norment_
                                                   Rashauna A. Norment
                                                   Arkansas Bar No. 2008156
                                                   Attorney for Plaintiffs
                                                   BL United, LLC
                                                   Pipe Me Industry, Inc.

# EXHIBIT A

For service of process contact the Secretary of State's office.

LLC Member information is now confidential per Act 865 of 2007

For access to our corporations bulk data download service click here.

Corporation Name
THE NURSERIE FARM & GARDEN MARKET, INC.

Fictitious Names
—

Filing #
811235092

Filing Type
For Profit Corporation

Filed Under Act
Dom Bus Corp; 958 of 1987

Status
Not Current

Principal Address
—

Reg. Agent
ROB GALLOWAY

Agent Address
4608 COLVERT RD LITTLE ROCK, AR 72223

Date Filed
02/20/2020

Officers
ROB GALLOWAY, Incorporator/Organizer
ROB GALLOWAY, President

Foreign Name
N/A

Foreign Address
—

State of Origin
—

Pay Franchise Tax for this corporation

# EXHIBIT B

US00D913962S

(12) **United States Design Patent**   (10) Patent No.:   **US D913,962 S**

Campos   (45) Date of Patent:   ** Mar. 23, 2021

(54) **MODULAR CONDUIT CABLE MANAGEMENT SYSTEM**

(71) Applicant: **Luis Campos**, North Little Rock, AR (US)

(72) Inventor: **Luis Campos**, North Little Rock, AR (US)

(**) Term: **15 Years**

(21) Appl. No.: **29/722,843**

(22) Filed: **Feb. 2, 2020**

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 16/539,229, filed on Aug. 13, 2019, and a continuation-in-part of application No. 29/701,620, filed on Aug. 13, 2019.

(51) **LOC (13) Cl.** ............................................... **13-03**
(52) **U.S. Cl.**
        USPC ........................................................ **D13/155**
(58) **Field of Classification Search**
        USPC ........ D8/349, 354, 356, 394, 396; D13/155,
                        D13/153, 156, 157, 184, 199
                        (Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 277,374 A * | 5/1883 | Strohm | ................... | H01B 3/082 174/111 |
| 289,164 A * | 11/1883 | Strohm | ................... | H01B 3/082 174/111 |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 2000724 | 10/2008 |
| EP | 2760091 | 12/2017 |

*Primary Examiner* — Jennifer O King

(74) *Attorney, Agent, or Firm* — Rashauna Norment

(57) **CLAIM**

The ornamental design for a modular conduit cable management system, as shown and described.

**DESCRIPTION**

FIG. **1** is an exploded perspective view of a modular conduit cable management system showing my new design;
FIG. **2** is another exploded perspective view thereof;
FIG. **3** is an exploded top plan view thereof;
FIG. **4** is an exploded bottom plan view thereof;
FIG. **5** is an exploded front elevation view thereof;
FIG. **6** is an exploded rear elevation view thereof;
FIG. **7** is an exploded left side elevation view thereof;
FIG. **8** is an exploded right side elevation view thereof;
FIG. **9** is an exploded cross-section view thereof;
FIG. **10** is an exploded cross-section view thereof;
FIG. **11** is a perspective view thereof, shown in use;
FIG. **12** is another perspective view thereof, shown in use;
FIG. **13** is an exploded perspective view thereof, shown in use;
FIG. **14** is another exploded perspective view thereof, shown in use;
FIG. **15** is a top plan view thereof, shown in use;
FIG. **16** is a bottom plan view thereof, shown in use;
FIG. **17** is an exploded front elevation view thereof, shown in use;
FIG. **18** is an exploded rear elevation view thereof, shown in use;
FIG. **19** is an exploded left elevation view thereof, shown in use;
FIG. **20** is an exploded right elevation view thereof, shown in use;
FIG. **21** is a front elevation view thereof, shown in use;
FIG. **22** is a rear elevation view thereof, shown in use;
FIG. **23** is a left elevation view thereof, shown in use;
FIG. **24** is a right elevation view thereof, shown in use;
FIG. **25** is a cross-section view thereof, shown in use;
FIG. **26** is a perspective view thereof, shown in use and with environment;

(Continued)



**US D913,962 S**

Page 2

FIG. **27** is another perspective view thereof, shown in use and with environment;

FIG. **28** is another perspective view thereof, shown in use and with environment;

FIG. **29** is a top plan view thereof, shown in use and with environment;

FIG. **30** is a bottom plan view thereof, shown in use and with environment;

FIG. **31** is a front elevation view thereof, shown in use and with environment;

FIG. **32** is a rear elevation view thereof, shown in use and with environment;

FIG. **33** is a left elevation view thereof, shown in use and with environment;

FIG. **34** is a right elevation view thereof, shown in use and with environment;

FIG. **35** is a perspective view thereof, shown in use and with additional environment;

FIG. **36** is an exploded perspective view of another embodiment of the modular conduit cable management system of my new design;

FIG. **37** is another exploded perspective view thereof;

FIG. **38** is an exploded top plan view thereof;

FIG. **39** is an exploded bottom plan view thereof;

FIG. **40** is an exploded front elevation view thereof;

FIG. **41** is an exploded rear elevation view thereof;

FIG. **42** is an exploded left side elevation view thereof;

FIG. **43** is an exploded right elevation view thereof;

FIG. **44** is an exploded cross-section view thereof;

FIG. **45** is an exploded cross-section view thereof;

FIG. **46** is a perspective view thereof, shown in use;

FIG. **47** is a perspective view thereof, shown in use;

FIG. **48** is an exploded perspective view thereof, shown in use;

FIG. **49** is another perspective view thereof, shown in use;

FIG. **50** is a front elevation view thereof, shown in use;

FIG. **51** is a rear elevation view thereof, shown in use;

FIG. **52** is a left elevation view thereof, shown in use;

FIG. **53** is a right elevation view thereof, shown in use;

FIG. **54** is a cross-section view thereof, shown in use;

FIG. **55** is another perspective view thereof, shown in use and with environment;

FIG. **56** is another perspective view thereof, shown in use and with environment;

FIG. **57** is another perspective view thereof, shown in use and with environment;

FIG. **58** is a top plan view thereof, shown in use and with environment;

FIG. **59** is a bottom plan view thereof, shown in use and with environment;

FIG. **60** is a front elevation view thereof, shown in use and with environment;

FIG. **61** is a rear elevation view thereof, shown in use and with environment;

FIG. **62** is a left elevation view thereof, shown in use and with environment;

FIG. **63** is a right elevation view thereof, shown in use and with environment; and,

FIG. **64** is a perspective view thereof, shown in use and with additional environment.

The broken lines shown in FIGS. **26-34** and **55-63** represent portions of the modular conduit cable management system that form no part of the claimed design. The additional broken lines in FIGS. **35** and **64** represent environment.

**1 Claim, 37 Drawing Sheets**

(58) **Field of Classification Search**
CPC ........ H01B 3/082; H01R 13/6392; F15L 7/00
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,225,867 A | | 5/1917 | Schumacher |
| 2,024,862 A | | 12/1935 | Hooley |
| 6,598,835 B2 | * | 7/2003 | Minnick .................. F16L 5/00 |
| | | | 248/56 |
| D707,107 S | * | 6/2014 | Crouuse ......................... D8/356 |
| 9,274,301 B2 | | 3/2016 | Her |
| D795,820 S | * | 8/2017 | Wengreen .................... D13/155 |
| D803,666 S | * | 11/2017 | Morley ......................... D8/356 |
| D817,153 S | * | 5/2018 | Harogolige Padmanabha ............ |
| | | | D8/356 |
| D822,618 S | * | 7/2018 | Chu ............................. D13/155 |
| D852,143 S | * | 6/2019 | Ku .............................. D13/155 |
| D860,765 S | * | 9/2019 | Tsay ............................ D8/356 |
| D861,622 S | * | 10/2019 | Lawrence ..................... D13/184 |
| D862,395 S | * | 10/2019 | Ruddick ....................... D13/156 |
| 10,431,930 B1 | * | 10/2019 | Pearman ............ H01R 13/6392 |
| D865,692 S | * | 11/2019 | Lawrence ..................... D13/184 |
| 2006/0213572 A1 | | 9/2006 | Beaulieu |
| 2011/0095162 A1 | | 4/2011 | Parduhn et al. |
| 2014/0123438 A1 | | 5/2014 | Donovan |

\* cited by examiner

Case 4:24-cv-00003-JM   Document 1   Filed 01/02/24   Page 39 of 123



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6



FIG. 7



FIG. 8





FIG. 9                    FIG. 10



FIG. 11



FIG. 12



FIG. 13          FIG. 14



FIG. 15



FIG. 16

FIG. 17

FIG. 18



FIG. 19                    FIG. 20





FIG. 21                    FIG. 22





FIG. 23          FIG. 24



FIG. 25





FIG. 26                    FIG. 27



FIG. 28



FIG. 29



FIG. 30





FIG. 31                    FIG. 32



FIG. 33          FIG. 34



FIG. 35



FIG. 36



FIG. 37



FIG. 38

FIG. 39



FIG. 40



FIG. 41



FIG. 42



FIG. 43





FIG. 44                    FIG. 45

54

54





FIG. 46                    FIG. 47



FIG. 48   FIG. 49





FIG. 50          FIG. 51





FIG. 52

FIG. 53



FIG. 54





FIG. 55                    FIG. 56



FIG. 57



FIG. 58



FIG. 59



FIG. 60



FIG. 61



FIG. 62                    FIG. 63



FIG. 64

# EXHIBIT C









# EXHIBIT D

Archive    Delete    ⭐ Star    ✉ Mark unread    🚫 Spam    Move to folder    ···

# Pipe Me In Hydroponic System

**me**                                                 Nov 14 2022   👁 (1)  ⏰   ⌐   ↩   ···
To: rob@thenurserie.com

Hello,

My name is Luigi Campos, I am with Pime Me In. I would like to introduce to you our new innovative PVC hydroponic and cable management system.

We want to help empower small businesses to have a competitive edged in vertical farming.

I have attached a Power Point presentation with additional information.

Please let us know if you have any questions.

Thank you for your time.

*Luigi Campos*

501-944-7473

www.pipemein.com

✅ Attachment scanned, safe to open

📄 **Farm Proposal.pptx**
   2.9 MB

↩   ↩   ➡   Write a reply...



# Pipe Me In and The Nurserie

Our patented grow tubes are arranged in a mobile grow rack and plants are hydroponically grown in patent pending grow clips attached to the grow tube. Water is pumped to the top of the tube and waters the plants as it gravity flows down the tube. The racks are suitable for indoor and outdoor growing.

An Arkansas Company dedicated to building a network of farms in hoop houses, schools, fire departments, hospitals, restaurants, community centers, and homes.

# What we do?

**Industry Training**

- We provide the farmer with hydroponic farming training methods based around the patented grow tube: Water quality levels, nutrient dosing levels, environmental input levels, plant growth schedules, harvest schedules, and more.

**Job Creation**

- Vertical farming is an industry that has many new farm job opportunities for food production, food distribution, and food training. Food banks, restaurants, food trucks, farmers, schools, non-profits, prisons, churches, food manufacturers, and governments are all segments creating new jobs.

**Product Development**

- Improvements to the grow tube, attachments, and automation will be ongoing to ensure food quality, harvest times, new plant varieties, growing techniques, shelf life, flavor profiles, biosecurity, harvesting techniques, and yields are improved.

**Commercial Farming**

- The vertical farming racks allow farmers to obtain larger yields per square foot. The ability to operate the grow racks indoors, opens up limitless spaces not normally suited for traditional farming. Multiple racks may also be linked together allowing farmers to reduce buildout costs for large projects.

## Veteran and Community Driven

## Key Grow Tube and Grow Rack Features

- Two, three, and four sided grow channels allowing for maximum yields
- Non fixed grow positions allows for custom plant spacing
- Stackable to unlimited heights
- Enclosed conduit tube formed in the center for water or electrical use
- American made
- Arkansas company



**Production**

## The One Pipe That Does It All

**Why Spend Money on these?**

**When you can have**



**Pipe Me In**

## Plant production range per 10 ft pipe

- One 10 FT pipe with 2 openings =
  **24 to 38 plants**

- **30 Plants x 250 pipes**
  **= 7,500 plants**

- **30 plants x 10,000 pipes**
  **= 300,000 plants**

- One 10 FT pipe with 3 openings =
  **38 to 58 plants**

- **50 Plants x 250 pipes**
  **= 12,500 plants**

- **50 plants x 10,000 pipes**
  **= 500,000 plants**

- One 10 FT pipe with 4 openings =
  **54 to 78 plants**

- **70 Plants x 250 pipes**
  **= 17,500 plants**

- **70 plants x 10,000 pipes**
  **= 700,000 plants**

  

**Vertical Farming Industry**

The vertical farming industry is expected to grow to over 4 billion in 2022 and to 20 billion in 2029 at a CAGR of 25.9% during the 2022-2029 time period.  With only a few patented vertical tower systems in the world, our product is positioned to achieve at minimum the same industry growth rates.

# Proposal Goals

## Hydroponic Farmer Rack Cost Share Program

We have established a working showroom that allows farmers to work with the grow rack and develop a quick understanding of how it operates. Each new or existing farmer will be trained and equipped with all the tools necessary to operate the farm. Ongoing support and supplies are also available year round at a retail location in Little Rock, Arkansas.

## School Farm Program

Establish classroom size farms in each school that has a cafeteria. The school farms should have a staff position managing the farm and coordinating the help of FFA, EAST, and STEM students. Our farming students need automation help and the EAST students are currently being taught the skill sets to provide the needed help. The STEM students will then share the success and educate the community about the schools farm.

## David O' Dodd Farm Conversion

Additional building space will be needed as the vertical farm company scales in production for dry and cold storage, farming, training, and product development. The school provides this and it will also serve as a training center built around an environment the teachers are comfortable with. A working farm at the location allows teachers to gain working experience around a model they can easily operate in their school. The building is one mile from our current production location.

# Things we need..

# Your help to empower people!

# EXHIBIT E





# EXHIBIT F









# EXHIBIT G



















# EXHIBIT H



FOOD

# Arkansas nursery expands hydroponic farming

—

The Nurserie in Little Rock is one of the only hydroponic farms in the state. This type of farming allows plants to grow without soil.



Author: Brooke Buckner
Published: 10:29 PM CST January 4, 2023
Updated: 10:29 PM CST January 4, 2023



LITTLE ROCK, Ark. — Imagine farming almost anywhere and without soil— that's exactly what one Central Arkansas nursery has been focusing on.

Hydroponic farming is a technique of growing that actually uses a water-based nutrient solution instead of soil.

A plant nursery in Little Rock, known as The Nurserie, has been working not only to grow produce but to grow the industry as a whole.

"It opens up boundaries," Nurserie Owner, Rob Galloway, said. "You're not limited to your square footage or your real estate. We take it indoors."

The Nurserie is also home to one of the only hydroponic farms in the state, and Galloway explained that growing plants using only water and no soil has many benefits.

"We use like 90% less water," Galloway said. "We can grow in areas where it's not traditional."

Hydroponic farming also allows for the adjustment of the speed at which plants grow.

"Introducing more nutrients to them can get them to grow faster, and slower water rates can get them to help the plant as well," Galloway said.

For example, lettuce can grow faster without soil.

Currently, The Nurserie can grow 800 heads of lettuce a week, but once the vertical farm is up and running, Galloway said that count should increase to 5,000.

"The biggest thing that we've accomplished so far with the hydroponic farm is just really getting to the point where we can scale and produce a lot of food," Galloway said.

Galloway hopes more people will do the same as he prepares to start selling a rack to expand vertical hydroponic farming.



"We have a patent on the spacers that go inside here too," Galloway said. "We can adjust the growth points, they don't have to stay, this is seven-and-a-half-inch spacing that we have here, and so we can adjust it to nine or two or whatever we need to do."

Galloway has been in talks with multiple schools about teaching hydroponic farming to get more young people interested.

"There's already been a lot of good traction with it," Galloway said. "We have one in Robinson right now. We have Pinnacle View Middle School looking to do the same thing, but working with the teachers and working with the programs from the FFA, the stem in the east, it's important."

The Nurserie Manager Bo Bennett oversees sales and said it's a more affordable way to buy fresh produce.

"What we're doing here is we're able to grow on a small scale, something that's comparable to what they would be producing in California," Bennett said. "This is running under $2 a head for wholesale. We retail for 250 here in the shop."

It goes straight from the table to the store shelves.

"We literally harvest it the day of, the day before," Bennett said. "We're just pulling it up like that you can see the roots. They're exposed growing directly in a water medium in a net pot with a Rockwool cube."

Bennett also sells produce to about 10 local restaurants.

"I match any price that they would be paying for a big box store for food to reach a food distributor," Bennett said. "I try to match that price point to get their business."

Bennett and Galloway said one of their biggest goals is to help reduce food insecurity through hydroponic farming. They said the racking systems could benefit churches, nonprofits, school districts, and even people's residential homes.

"Hydroponics brings the food closer to the people," Galloway said. "It brings access to people that didn't have it before. So, urban farming is really big. We want to produce as much food as we can. We want to equip as many farmers as we can to farm, we're going to help them, and so if you want to farm, you can come and talk to us. We'll help you."

Galloway said he's also talking to state leaders about plans to expand hydroponic farming.

He also hopes to get his planter rack on big box store shelves.

**Related Articles**

USDA announces $1 billion debt relief for 36,000 farmers

Relief for Arkansas farmers is on the way

Experts explain the reason behind increase in price of eggs

Tab☺☺la Food

**Arkansas: New Policy For "Senior Drivers"**
Don't pay another auto insurance bill until you read this...
My Insurance Savings | Sponsored                                    Learn more

**Gov. Sanders calls for resignation of Arkansas Board of Corrections chairman**
KTHV

**All-in-one Ai Communications**
Dialpad | Sponsored

**You Could Save Big When You Bundle**
There are lots of ways to save on your auto insurance, like bundling it with homeowners. USAA Insurance is made for families on a budget.
USAA | Sponsored                                                    Get quote

**Spray Alcohol on Your Bed at Night and Just Watch**
LifeHack Guru | Sponsored

**2 Steps To Tell When A Slot is Close To Hitting The Jackpot**
4.8★ 50M+
Buzzdaily Winners | Sponsored                                    Read More

**Disney Bundle**
Access epic stories, tons of movies & shows, and more — all for one incredible price.
Disney+ | Sponsored                                             Subscribe

**Wrap Foil Around Your Doorknob When Alone, Here's Why**
LifeHack Guru | Sponsored

**How big is the largest deer killed in Arkansas?**
KTHV

**Women accuse Arkansas psychiatrist of mistreatment as nearly 60 other ex-patients have filed a lawsuit against him**
KTHV

**LOADING NEXT ARTICLE...**

# EXHIBIT I

12/23/23, 1:11 PM                                    The Nurserie | Little Rock AR | Facebook

facebook                                                                                    Log In



## The Nurserie's Post                                                                       ✕

**The Nurserie**
January 5 · 🌐

Thanks for coming to visit us THV11!
https://www.thv11.com/.../91-f2f2018e-eb8a-4025-a6fa...

THV11.COM
**Arkansas nursery expands hydroponic farming**
The Nurserie in Little Rock is one of the only hydroponic farms in the state. This type of farming al...

👍❤️ 61                                         10 comments  6 shares

👍 Like                        💬 Comment

Most relevant ▾

**Anna Robnett**
👏👏👏 love this for you guys!
50w

**Brooke Buckner TV** ✓
Thank you for doing the story with us!
50w

✏️ Author
**The Nurserie**
Brooke Buckner TV Thank you for informing our community. It was a great experience!
50w

**Rebecca Hoffman**
I grew hydroponic for the first time this summer and it was a game changer.
50w

**April Washington**
I saw this! 😍
50w

## Connect with The Nurserie on Facebook

[ Log In ]   or   [ Create new account ]

https://www.facebook.com/thenurserie                                                        1/1

# EXHIBIT J



An official website of the United States government
Here's how you know ∨

# Patent Public Search Basic (PPUBS Basic)

## Quick lookup

Query building guidance

Patent or Publication number
For example: 0123456 or 20210123456

| | Search |

**OR**

## Basic search

Query building guidance

Search

| Applicant name ∨ |

For

| nurserie |

Operator

| AND ∨ |

Search

| Inventor name ∨ |

For

| |

| Reset | Search |

## Search results

Results for query "(nurserie).aanm."

| Result # | Document/Patent number | Title | Inventor name | Publication date | Pages |
|----------|------------------------|-------|---------------|------------------|-------|

No records found



BROWSE BY TOPIC                                                    ▼

ABOUT THIS SITE                                                    ▼

USPTO BACKGROUND                                                   ▼

FEDERAL GOVERNMENT                                                 ▼

An official website of the United States government
Here's how you know ⌄

# Patent Public Search Basic (PPUBS Basic)

## Quick lookup

Query building guidance

Patent or Publication number

For example: 0123456 or 20210123456

| | |
|---|---|
| | Search |

## OR

## Basic search

Query building guidance

Search

| Inventor name ⌄ |
|---|

For

| carrie |
|---|

Operator

| AND ⌄ |
|---|

Search

| Inventor name ⌄ |
|---|

For

| galloway |
|---|

Reset    Search

## Search results

Results for query **"(carrie).in. AND (galloway).in."**

| Result # | Document/Patent number | Title | Inventor name | Publication date | Pages |
|---|---|---|---|---|---|
| | | No records found | | | |

uspto

Patent Public Search Basic | USPTO

BROWSE BY TOPIC

ABOUT THIS SITE

USPTO BACKGROUND

FEDERAL GOVERNMENT

An official website of the United States government
Here's how you know  ⌄

# Patent Public Search Basic (PPUBS Basic)

## Quick lookup

Query building guidance

Patent or Publication number

For example: 0123456 or 20210123456

| | Search |
|---|---|

## OR

## Basic search

Query building guidance

Search

| Inventor name | ⌄ |
|---|---|

For

| rob |
|---|

Operator

| AND | ⌄ |
|---|---|

Search

| Inventor name | ⌄ |
|---|---|

For

| galloway |
|---|

Reset    Search

## Search results

Results for query "(rob).in. AND (galloway).in."

| Result # | Document/Patent number | Title | Inventor name | Publication date | Pages |
|---|---|---|---|---|---|
| | | No records found | | | |

uspto

Patent Public Search Basic | USPTO



BROWSE BY TOPIC

ABOUT THIS SITE

USPTO BACKGROUND

FEDERAL GOVERNMENT

12/29/23, 12:53 PM                                    Patent Public Search Basic | USPTO

An official website of the United States government
Here's how you know ⌄

# Patent Public Search Basic (PPUBS Basic)

## Quick lookup                                           Query building guidance

Patent or Publication number
For example: 0123456 or 20210123456

| | Search |
|---|---|

## OR

## Basic search                                            Query building guidance

Search

| Inventor name ⌄ |
|---|

For

| robin |
|---|

Operator

| AND ⌄ |
|---|

Search

| Inventor name ⌄ |
|---|

For

| galloway |
|---|

Reset  Search

## Search results

Results for query "(robin).in. AND (galloway).in."                    Showing 1 to 3 of 3 records

| Result # | Document/Patent number | | Title | Inventor name | Publication date | Pages |
|---|---|---|---|---|---|---|
| 1 | US-20090318414-A1 | Preview PDF | Mono and Combination Therapy with M1/M4 Muscarinic Agonist (Sabcomeline) for Treatment of Prodromal Syndrome | Sharpe; Paul Christopher et al. | 2009-12-24 | 7 |

| Result # | Document/Patent number | | Title | Inventor name | Publication date | Pages |
|---|---|---|---|---|---|---|
| 2 | US-20090306040-A1 | Preview PDF | Mono and Combination Therapy of M1/M4 Agonist (Sabcomeline) for Treatment of Negative Symptoms of Schizophrenia | Sharpe; Paul Christopher et al. | 2009-12-10 | 14 |
| 3 | US-20090258084-A1 | Preview PDF | Mono and Combination Therapy with a M1/M4 Muscarinic Agonist (Sabcomeline) for Treatment of Cognitive Disorders in Schizophrenia | Sharpe; Paul Christopher et al. | 2009-10-15 | 13 |

‹ | Page 1 of 1 | ›



BROWSE BY TOPIC

ABOUT THIS SITE

USPTO BACKGROUND

FEDERAL GOVERNMENT

**EXHIBIT K**





